RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0462p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JOHN DOE,

               *Plaintiff-Appellant,*

     *v.*

SEXSEARCH.COM, et al.,

               *Defendants-Appellees.*

No. 07-4182

>

Appeal from the United States District Court

for the Northern District of Ohio at Toledo.

No. 07-00604—Jack Zouhary, District Judge.

Argued: October 24, 2008

Decided and Filed: December 30, 2008

Before: BOGGS, Chief Judge; MERRITT and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Dean Boland, Lakewood, Ohio, for Appellant. Gary J. Kaufman, *Pro Hoc Vice*, KAUFMAN LAW GROUP, Los Angeles, California, for Appellees. **ON BRIEF:** Dean Boland, Lakewood, Ohio, for Appellant. Gary J. Kaufman, Colin A. Hardacre, Dana S. Milmeister, *Pro Hoc Vice*, KAUFMAN LAW GROUP, Los Angeles, California, Richard Marvin Kerger, KERGER & HARTMAN, Toledo, Ohio, for Appellees. Michael B. Bressman, VANDERBILT LEGAL CLINIC, Nashville, Tennessee, for Amici Curiae.

_____

**OPINION**

_____

MERRITT, Circuit Judge.  Pseudonymous plaintiff John Doe appeals the dismissal of his complaint against defendant, SexSearch.com ("SexSearch"), an online adult dating service that facilitates sexual encounters between its members.  Doe used SexSearch to meet Jane Roe, who described herself as an eighteen-year-old female.  The two met and had sexual relations.  Roe, it turned out, was actually fourteen years old, and Doe was consequently arrested and charged with three counts of unlawful sexual conduct with a minor.  In an unusual case of first impression, Doe then filed suit against SexSearch, alleging an array of violations under Ohio law, most of which are variations on the claim that SexSearch is at fault for Doe's sexual relationship with a minor and the harm that resulted from his arrest.

The district court dismissed all fourteen causes of action under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  In the alternative, the district court held that eight of the fourteen causes of action were also barred by the Communications Decency Act, 47 U.S.C. § 230.  Because we agree with the district court that Doe's complaint failed to state a claim, we do not reach the question of whether the Communications Decency Act provides SexSearch with immunity from suit. We do not adopt the district court's discussion of the Act, which would read § 230 more broadly than any previous Court of Appeals decision has read it, potentially abrogating all state- or common-law causes of action brought against interactive Internet services.  We do not have before us any issue concerning the criminal liability of the parties or the voidability of contracts for sexual services.

**I.**

SexSearch is an "online adult dating service."  Its members use the website to meet one another for sexual encounters.  In October 2005, John Doe became a "Gold Member" of SexSearch, which required him to pay $29.95 per month and agree to the site's Terms and Conditions, including a promise on Doe's behalf that he was at least eighteen years old. Using the service, Doe met Jane Roe, who likewise had become a "Gold Member" after agreeing to SexSearch's Terms and Conditions and warranting that she was at least eighteen.

In her profile, she stated that she was born June 15, 1987.  After meeting online, Roe invited Doe to her home on November 15, 2005, at which point they had sexual relations.

At some point thereafter, Roe, who was actually fourteen, told the police about her encounter with Doe.  On December 30, 2005, police surrounded Doe's home, arrested him, and charged him with three counts of engaging in unlawful sexual conduct with a minor, a third-degree felony.  For reasons that are unclear, the charges were later dismissed and Doe's records were sealed.  Doe claims, however, that the arrest and prosecution — and the publicity that accompanied them — caused lasting harm to his reputation, family life, and employment prospects.

Based on this harm, Doe filed suit against fifteen corporate and individual defendants, whom he believed were the owners of SexSearch.  The complaint contained fourteen causes of action, which, as the district court noted, "boil down to either (a) Defendants failed to discover [that] Jane Roe lied about her age to join the website, or (b) the contract terms are unconscionable."  *Doe v. SexSearch.com*, 502 F. Supp. 2d 719, 724 (N.D. Ohio 2007).

Defendants then filed motions to dismiss for lack of personal jurisdiction and for failure to state a claim.  For the sake of judicial economy, defendant/intervenor Cytek, Ltd., which claims to be the true owner of SexSearch, agreed to enter an appearance and waive all issues related to service of process and personal jurisdiction so that the court could consider the 12(b)(6) motion before undertaking the time-consuming task of evaluating personal jurisdiction for each remaining defendant.

The district court granted the motion to dismiss, concluding that Doe had failed to state a claim as to each of the fourteen causes of action and, in the alternative, concluding that many of the claims were barred by the Communications Decency Act.  This appeal followed.

## II.

We review the district court's judgment de novo.  *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008).  We construe the complaint in the light most favorable to the nonmoving party and accept all well-pleaded factual allegations as true to determine whether

the moving party is entitled to judgment as a matter of law. *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). While our analysis primarily focuses on the complaint, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint . . . may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

As noted above, we do not adopt the district court's analysis of the Communications Decency Act and explicitly reserve the question of its scope for another day. We do, however, affirm the district court's decision to dismiss Doe's complaint for failure to state a claim.

Count One alleges that SexSearch breached its contract with Doe by permitting minors to become members of its service. Under Ohio law, to prove breach of contract, a plaintiff must prove that (1) a contract existed; (2) plaintiff fulfilled his obligations; (3) defendant failed to fulfill his obligations; and (4) damages resulted from this failure. *Lawrence v. Lorian County Cmty Coll.*, 713 N.E.2d 478, 480 (Ohio Ct. App. 1998). A contract between Doe and SexSearch was formed when Doe checked a box indicating that he was over eighteen and had read and agreed to SexSearch's Terms and Conditions and privacy policy. The Terms and Conditions constitute the content of the contract. Doe alleges that SexSearch failed to fulfill its obligations by "permitt[ing] minors to become paid members" and by "deliver[ing] a minor to Plaintiff for the purpose of sexual relations." Compl. ¶¶ 296-97, J.A. at 46. But the Terms and Conditions state that SexSearch "cannot guarantee, and assume[s] no responsibility for verifying, the accuracy of the information provided by other users of the Service." The contract requires that members be "eighteen or over to register," but nowhere does SexSearch promise to prevent minors from registering or to monitor members' profiles for accuracy. Therefore, the complaint does not state a breach-of-contract claim because Doe has not alleged that SexSearch has breached any promise that is actually part of the contract.

Count Two alleges that SexSearch fraudulently represented that "all persons on its site are '18+' years of age," and that it "verifies all members profiles prior to posting." Compl. ¶¶ 301, 302, J.A. at 47. This allegation stems from a warning on SexSearch stating that "all persons within this site are 18+." To state a claim of fraud, plaintiff must allege: (a)

a representation (b) that is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *Orbit Elecs., Inc. v. Helm Instrument Co.*, 855 N.E.2d 91, 100 (Ohio Ct. App. 2006). The most obvious deficiency comes from the requirement of justifiable reliance upon the representation. As noted, the Terms and Conditions expressly disclaim responsibility for verifying members' ages. They also state that no "information, whether oral or written, obtained by you from SexSearch or through or from [sic] SexSearch shall create any warranty not expressly stated in the TAC." Furthermore, having registered for the site himself, Doe knew that SexSearch merely required a user to check a box stating that he or she is at least eighteen, with no corroborating evidence required from the user and no attempt at verification made by SexSearch. As a result, there could be no justifiable reliance on the warning, and thus Count Two does not state a claim for fraudulent representation.

Count Three alleges that SexSearch negligently inflicted emotional distress by failing to remove Roe's profile from its website. To state a claim for negligent infliction of emotional distress under Ohio law, the plaintiff must allege that he was aware of real physical danger to himself or another. *See King v. Bogner*, 624 N.E.2d 364, 367 (Ohio Ct. App. 1993); *see also Heiner v. Moretuzzo*, 652 N.E.2d 664, 669 (Ohio 1995) (Ohio courts have limited "recovery for negligent infliction of emotional distress to instances where the plaintiff has either witnessed or experienced a dangerous accident or appreciated the actual physical peril"). Doe's alleged injuries result from embarrassment and harm to social standing and employment prospects; he does not allege that he experienced a dangerous accident or appreciated actual physical peril and, consequently, has not stated a claim for negligent infliction of emotional distress. *See Wigfall v. Society Nat'l Bank*, 669 N.E.2d 313 (Ohio Ct. App. 1995) (affirming trial court's grant of summary judgment for defendant on plaintiff's claim for negligent infliction of emotional distress, where defendant falsely accused plaintiff of robbing a bank, resulting in plaintiff's arrest and interrogation and the publication of his photograph).

Count Four alleges negligent misrepresentation based on the warning that all members of SexSearch are adults. A defendant is liable for negligent misrepresentation if

he (1) supplies false information (2) for the guidance of others in their business transactions (3) causing pecuniary loss to the plaintiff (4) while the plaintiff justifiably relied upon the information (5) and the defendant failed to exercise reasonable care or competence in obtaining or communicating the information. *Delman v. City of Cleveland Heights*, 534 N.E.2d 835, 838 (Ohio 1989). Courts have also recognized that a claim for negligent misrepresentation requires "a special relationship under which the defendant supplied information to the plaintiff for the latter's guidance in its business transaction." *Ziegler v. Findlay Indus., Inc.*, 464 F. Supp. 2d 733, 738 (N.D. Ohio 2006). The information at issue in this case was not supplied to guide others in their business transactions; nor is Doe complaining about any pecuniary losses; nor (as noted) was his reliance justifiable; nor has he alleged any "special relationship" between himself and SexSearch. Therefore he has failed to state a claim for negligent misrepresentation.

Count Five alleges a breach of warranty, likewise based on the same warning about users being over eighteen. Under Ohio Rev. Code § 1302.26,"[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." The section only applies to the sale of goods, not to services. *See Brown v. Christopher Inn Co.*, 344 N.E.2d 140 (Ohio Ct. App. 1975) (holding that § 1302.26 does not apply when there is no sale of goods, as defined by the Uniform Commercial Code). Because SexSearch is a service and Doe has not alleged that the dispute concerns the sale of goods, he has not stated a claim for breach of warranty.

Counts Six through Ten allege violations of the Ohio Consumer Sales Practices Act. Counts Six and Seven allege deceptive trade practices in violation of Ohio Rev. Code § 1345.02. When determining whether an act or practice is deceptive, the court views the incident from the consumer's standpoint. *Chestnut v. Progressive Cas. Ins. Co.*, 850 N.E.2d 751, 757 (Ohio Ct. App. 2006). "The basic test is one of fairness; the act need not rise to the level of fraud, negligence, or breach of contract." *Id.* "Furthermore, a deceptive act has the likelihood of inducing a state of mind in the consumer that is not in accord with the facts." *Id.* Here, there was no likelihood that SexSearch's warning that all users are over eighteen would induce a state of mind in Doe that was not in accord with the facts. He had agreed to the Terms and Conditions, which state that SexSearch is not responsible for verifying users'

ages, and had gone through the registration process himself and thus knew that SexSearch took no steps to check the accuracy of users' promises that they are eighteen. Because the warning was not deceptive, when viewed from Doe's perspective, Counts Six and Seven do not state a claim for deceptive sales practices.

Counts Eight through Ten allege unconscionable acts in violation of Ohio Rev. Code § 1345.03, which states: "No supplier shall commit an unconscionable act or practice in connection with a consumer transaction." Ohio Rev. Code § 1345.03(A). When determining whether an act is unconscionable, a court should consider, among other things, "[w]hether the supplier required the consumer to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the supplier." *Id.* § 1345.03(B)(5). The allegedly unconscionable acts at issue here are the inclusion of: a clause limiting damages to the amount of the contract (Count Eight), a clause allowing SexSearch to cancel the contract at any time (Count Nine), and unspecified clauses that are substantially one-sided (Count Ten).

Limitation-of-liability clauses are viewed critically, but may be freely bargained for in Ohio and will be enforced "'[a]bsent important public policy concerns, unconscionability, or vague and ambiguous terms.'" *Nahra v. Honeywell, Inc.*, 892 F. Supp. 962, 969 (N.D. Ohio 1995) (quoting *Collins v. Click Camera & Video, Inc.*, 621 N.E.2d 1294, 1298 (Ohio Ct. App. 1993). A SexSearch gold membership costs $29.95 per month. Given the nature of the service, which encourages members to meet in person for sexual encounters, SexSearch's potential liability is nearly limitless. For example, arrest, diseases of various sorts, and injuries caused by irate family members or others may be the result of such hedonistic sex. When selling such services, then, it is commercially reasonable for SexSearch to limit its liability to the price of the contract. *See Motorists Mut. Ins. Co. v. ADT Sec. Sys.*, 1995 WL 461316 (Ohio Ct. App. Aug. 4, 1995) (upholding as commercially reasonable and not unconscionable or substantially one-sided a limitation-of-liability clause that tied liability to the contract price). The case that Doe relies on for the proposition that a limitation of liability violates the Ohio Consumer Sales Practices Act is an unpublished consent decree that merely states that the defendants in that case had improperly included a limitation-of-liability clause; it does not suggest that such clauses are always unconscionable. *State, ex rel. Montgomery v. Thermal Seal, Inc.*, 2001 WL 1841771 (Ohio

Com. Pl. Sep. 18, 2001).  The clause at issue is not unconscionable within the meaning of § 1345.03(A) and so Count Eight does not state a claim for relief.

SexSearch's right to cancel, which Doe describes as "unilateral," is likewise not unconscionable.  Members may cancel at any time; they must do so at least three days before the next monthly billing cycle to avoid being charged for the next month, and they will not receive a refund unless unusual circumstances apply.  But those conditions hardly amount to a unilateral right to cancel on SexSearch's behalf.  And when SexSearch does cancel a paid membership, it will provide "a pro-rata refund for the unexpired period of the cancelled month's membership by automatic credit."  Furthermore, SexSearch's power to cancel memberships is presumably designed to protect members from those who have violated the Terms and Conditions or posted false content.  Therefore the right to cancel is not unconscionable within the meaning of § 1345.03(A) and so Count Nine does not state a claim for relief.  Count Ten does not specify which clauses are so substantially one-sided as to rise to the level of unconscionability, but a review of the Terms and Conditions does not turn up any candidates, and thus the dismissal of Count Ten should also be affirmed.

Counts Eleven through Thirteen allege common-law unconscionability in the Terms and Conditions.  At common law, unconscionability is a *defense* against enforcement, not a basis for recovering damages.  *See, e.g.*, RESTATEMENT (SECOND) OF CONTRACTS § 208 (1981) ("If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result."); *Bennet v. Behring Corp.*, 466 F. Supp. 698, 700 (S.D. Fla. 1979) ("[T]he equitable theory of unconscionability has never been utilized to allow for the affirmative recovery of money damages."); *Johnson v. Long Beach Mortg. Loan Trust 2001-4*, 451 F. Supp. 2d 16, 36 (D.D.C. 2006) ("Plaintiff cannot recover compensatory damages under the common law doctrine of unconscionability.").  If Doe were seeking a declaratory judgment or reformation of the contract, unconscionability could form the basis of a cause of action.  *See Johnson*, 451 F. Supp. 2d at 36.  But he is not requesting either of these remedies, nor would either do him any good.  While we agree with the district court's analysis of why Counts Eleven through Thirteen fail to satisfy the two-prong showing of procedural unconscionability and substantive unconscionability, *see Doe*, 502

F. Supp. 2d at 734-36, we note that it is unnecessary to analyze these elements here, since the doctrine itself is inapplicable.

Finally, Count Fourteen alleges that SexSearch failed to warn Doe that a minor may be a member of the service. A failure-to-warn claim requires (1) a duty to warn, (2) a breach of that duty, and (3) injury proximately resulting from the breach. *Freas v. Prater Contsr. Corp.*, 573 N.E.2d 27, 30 (Ohio 1991). Where the danger is open and obvious, there is no duty to warn. *Livengood v. ABS Contractors Supply*, 710 N.E.2d 770, 772 (Ohio Ct. App. 1998). "Where only one conclusion can be drawn from the established facts, the issue of whether a risk was open and obvious may be decided by the court as a matter of law." *Klauss v. Glassman*, 2005 WL 678984 at *3 (Ohio Ct. App. Mar. 24, 2005). A risk is considered open and obvious when its "dangers are within the body of knowledge common to the community" and "generally known and recognized by the ordinary consumer." *Gawloski v. Miller Brewing Co.*, 644 N.E.2d 731, 733 (Ohio Ct. App. 1994). In this case, the danger that a member of SexSearch could be a minor is open and obvious. Internet users' anonymity and potential for false personal representations are well known. Doe was familiar with the registration process and knew that SexSearch did nothing more than asking members to check a box indicating that they are at least eighteen. Furthermore, even if there was a duty to warn, the statement in the Terms and Conditions that SexSearch could not verify members' information could be seen as a satisfaction of that duty. Therefore, Doe has failed to state a claim for failure to warn.

**III.**

We, therefore, AFFIRM the district court's judgment dismissing Doe's complaint for failure to state a claim.