NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0522n.06

Nos. 24-1947 / 1951

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| CHARLES BLACKWELL, | ) | |
| Plaintiff-Appellee, | ) ) | **FILED** Nov 05, 2025 KELLY L. STEPHENS, Clerk |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| STEVEN CHISHOLM, DAVID JONES, and CITY OF INKSTER, MICHIGAN, | ) ) ) | |
| Defendants-Appellants. | ) ) ) ) | OPINION |

Before: READLER, MURPHY, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. During a meeting of the Inkster City Council, Charles Blackwell held up a satirical poster criticizing City Attorney David Jones and, at the end of the meeting, he called Jones a "chump." Three days later, Jones filed a petition for a protection order against Blackwell, accusing him of stalking and threatening behavior. To support the petition, City Councilmember Steven Chisholm took screenshots of Blackwell's private Instagram posts showing that Blackwell owned a gun, and he emailed the screenshots to Jones to submit to the court. The Michigan Circuit Court granted the protection order, but the Michigan Court of Appeals reversed, holding that Blackwell's speech was constitutionally protected.

Blackwell then sued Jones, Chisholm, and the City of Inkster, alleging that Jones and Chisholm retaliated against him for exercising his First Amendment rights and that Inkster had an unconstitutional policy of funding this First Amendment retaliation. Jones and Chisholm appeal

the district court's denial of their motion to dismiss based on qualified immunity, and Inkster appeals the denial of its motion to dismiss the municipal liability claim. Because Blackwell alleged a plausible claim that Jones and Chisholm violated his clearly established constitutional rights, we affirm the district court's denial of the motion to dismiss his First Amendment retaliation claim. We dismiss Inkster's appeal of the denial of its motion to dismiss Blackwell's municipal liability claim because we lack jurisdiction over it at this interlocutory stage.

## BACKGROUND

This case comes before us on a motion to dismiss, so we recite the facts as they are alleged in the complaint. *Rudd v. City of Norton Shores*, 977 F.3d 503, 507 (6th Cir. 2020). We also consider documents attached to the complaint. *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 536 (6th Cir. 2017).

Since 2020, Charles Blackwell, a private citizen, has frequently attended meetings of the Inkster City Council, either in-person or via Zoom. At these meetings, he has often criticized Inkster officials, including David Jones, the City Attorney for Inkster, and Steven Chisholm, an Inkster City Councilmember.

On July 18, 2022, Blackwell attended an Inkster City Council meeting in person while carrying a satirical poster. The poster displayed an edited image of Jones's wife lying in bed next to the Inkster Mayor with a caption stating: "You don't have to remind me. I already know David Jones is A Bad Inkster City Attorney." The poster displayed the heads of Jones's wife and the

Inkster mayor next to each other on pillows. The top of the poster stated "FICTION."

 

At the end of the meeting, Blackwell also criticized Jones by calling him a "chump" as Jones walked by him. The next day, Chisholm used his Instagram account, titled "CouncilmanChisholm," to screenshot Blackwell's posts showing his legal firearms. Blackwell has a private Instagram account, but as an approved follower, Chisholm could view the images he posted. Blackwell alleges that Chisholm screenshotted the firearm images at Jones's request because Jones was not approved to follow Blackwell's account. Chisholm then emailed Jones the photos via his government email address.

Two days after receiving the photos from Chisholm, Jones filed a petition for an *ex parte* Personal Protection Order (PPO) against Blackwell in a Michigan trial court, which in Michigan is called a circuit court. In the petition, Jones listed several incidents of Blackwell's alleged "stalking or other threatening behavior" including the July 18, 2022 Inkster City Council meeting. PPO Pet., R. 17-5, PageID 150–52. Jones also alleged instances where Blackwell emailed edited images of Jones to the Detroit Board of Ethics; presented an edited image of Jones at a meeting of

the Detroit Board of Ethics; and disparaged Jones's character and integrity at meetings of the Inkster City Council, Detroit Board of Ethics, and Michigan Indigent Defense Commission. Jones alleged that, for two years, Blackwell had "appeared at nearly every public meeting" Jones was required to attend to "ridicule, embarrass or harass" him. *Id.* at PageID 152. Jones did not allege that Blackwell disrupted any of those meetings. Nor did Jones allege that any of the edited images Blackwell shared were lewd or vulgar, or that any of Blackwell's conduct occurred outside of public meetings or communications with public entities. Along with the petition, Jones included the firearm photos that Chisholm screenshotted from Blackwell's private Instagram account.

Blackwell alleges that Jones prepared the PPO petition while working in his official capacity as Inkster City Attorney and billed Inkster for the time spent on the petition. He further alleges that, while the PPO litigation was ongoing, Inkster approved payments to Jones's law firm for work on the PPO.

A Michigan Circuit Court judge granted Jones's *ex parte* petition the next day and entered a PPO against Blackwell for one year. The PPO prohibited Blackwell from approaching Jones or appearing at his workplace, communicating with Jones through any medium, and purchasing or possessing a firearm. As a result, Blackwell could not attend any Inkster City Council meetings in person. Blackwell moved to terminate the PPO on the grounds that it infringed on his constitutionally protected speech. After an evidentiary hearing, the court denied the motion. The Michigan Circuit Court held that Blackwell's "repeated conduct of displaying critical caricatures of [Jones], with commentary, to [Jones], both in-person and electronically, constituted stalking" and that Blackwell's speech was not protected by the First Amendment because it violated Jones's "right to be left alone." *DWJ v. CLB*, No. 363324, 2023 WL 7270488, at *1 (Mich. Ct. App. Nov. 2, 2023) (per curiam) (explaining the trial court's holding).

Blackwell appealed to the Michigan Court of Appeals, which reversed, holding that Blackwell's speech was constitutionally protected. *Id.* at *5. The court held that Blackwell's messages about Jones were "tasteless, boorish, and offensive," but still constituted constitutionally "protected commentary about public officials and public matters." *Id.* at *4–5. The Michigan Supreme Court denied Jones's application for leave to appeal. *DWJ v. CLB*, 6 N.W.3d 367 (Mich. 2024) (mem).

After the Michigan Court of Appeals decision, Blackwell sued Jones, Chisholm, and Inkster under 42 U.S.C. § 1983 for violating his First Amendment rights. He claimed that Jones and Chisholm retaliated against him for expressing his views at the July 18, 2022, City Council meeting by seeking a protective order and, thereby, prohibiting him from attending future meetings. He further claimed that Inkster had a policy or practice of supporting such First Amendment retaliation. The three defendants moved to dismiss, with Jones and Chisholm asserting a qualified immunity defense. The district court adopted the magistrate judge's report and recommendation and denied the motion to dismiss.

The defendants brought this interlocutory appeal.

## ANALYSIS

We review de novo the district court's denial of the defendants' motion to dismiss Blackwell's complaint. *Willman v. Att'y Gen. of U.S.*, 972 F.3d 819, 822 (6th Cir. 2020). In doing so, we construe the complaint in the light most favorable to Blackwell, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of Blackwell. *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). To survive a motion to dismiss, Blackwell's complaint need only contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Here, the district court denied all three defendants' motions to dismiss, and Jones, Chisholm, and Inkster each appeal. Because our analysis—and jurisdiction—differs between the individual defendants and the municipal defendant, we consider them separately, in turn.

## I.     First Amendment Retaliation Claim Against Jones and Chisholm

Jones and Chisholm argue that the district court erred in denying their motion to dismiss Blackwell's First Amendment retaliation claim on qualified immunity grounds. Chisholm additionally argues that Blackwell cannot bring a § 1983 claim against him for First Amendment retaliation because he was not "acting under color of state law."

Before we analyze these issues, we are cautious to ensure our jurisdiction to do so, as the case comes to us in an interlocutory posture. *See Gillman v. City of Troy*, 126 F.4th 1152, 1158 (6th Cir. 2025). It is well-established that we have jurisdiction to review a district court order denying a motion to dismiss based on qualified immunity, as long as the appeal "turns on an issue of law"—as it does here—and not disputes of fact. *Id.* (quoting *Adams v. Blount County*, 946 F.3d 940, 948 (6th Cir. 2020)); *see Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 562 (6th Cir. 2011). "Because we have jurisdiction over the qualified-immunity issue," our pendent jurisdiction allows us to also review whether Chisholm was "acting under color of state law—an element of the § 1983 claim." *Kalvitz v. City of Cleveland*, 763 F. App'x 490, 495 (6th Cir. 2019) (citing *Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002)).

We begin by analyzing whether Blackwell has plausibly alleged that Chisholm was acting under color of state law. Then, we turn to the Jones's and Chisholm's qualified immunity defense.

### A.     "Under Color of State Law"

Chisholm argues that the district court erroneously found that he was a state actor when he screenshotted Blackwell's Instagram posts and emailed the photos to Jones. To state a § 1983

claim, Blackwell must prove that Chisholm was "acting under the color of state law" during the allegedly unconstitutional conduct. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). Chisholm contends that the district court did not apply the proper analysis—delineated in *Lindke v. Freed*, 144 S. Ct. 756 (2024)—to determine whether Blackwell satisfied the state-action requirement.

But, for this case, we need not determine whether Blackwell plausibly alleged that Chisholm was himself a state actor. Instead, Chisholm can be liable under § 1983 if he conspired with a state actor to deprive Blackwell of his First Amendment rights. The Supreme Court has held that private parties who conspire with state actors to violate constitutional rights act under color of law for purposes of § 1983 claims. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150–52 (1970). So we have explained that an adequately alleged § 1983 conspiracy claim involving private and state actors "generally suffice[s] to establish state action on the part of the private actors for the purpose of deciding a motion to dismiss." *Rudd*, 977 F.3d at 512 (quoting *Revis v. Meldrum*, 489 F.3d 273, 292 (6th Cir. 2007)). The district court found that Jones was acting under color of state law, a finding that none of the defendants challenge on appeal. And Blackwell alleges that Jones and Chisholm conspired to retaliate against him for his speech. Therefore, if Blackwell pled sufficient facts to connect Chisholm to a § 1983 conspiracy, we need not decide whether the district court properly applied *Lindke* to determine that he was a state actor.

We thus ask whether Blackwell plausibly alleged a § 1983 conspiracy claim involving Chisholm. Blackwell must allege that there was (1) a "single plan," (2) that Chisholm "shared in the general conspiratorial objective," and (3) that Chisholm committed an "overt act" in "furtherance of the conspiracy." *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985). *First*, Blackwell plausibly alleges that Jones and Chisholm "were both motivated to retaliate against [him]" for his poster at the July 18, 2022, Inkster City Council meeting by filing a PPO petition.

Compl., R. 17, PageID 131. This claim sufficiently alleges a "single plan." *Second*, he makes a specific allegation that Chisholm shared in the conspiratorial objective by pleading that Chisholm screenshotted firearm photos from Blackwell's Instagram "at the request of Defendant Jones" and "was personally aware that the firearm pictures he was emailing to Defendant Jones were going to be used in a PPO lawsuit against" Blackwell. *Id.* at PageID 117, 119. *Third* and lastly, he alleges overt acts taken to further the conspiracy by both Chisholm and Jones, specifically Chisholm screenshotting Blackwell's Instagram posts and emailing the photos to Jones from his official City of Inkster email account and Jones filing the PPO petition with the photos as an exhibit. Accordingly, Blackwell adequately alleged that Jones and Chisholm engaged in an unlawful conspiracy to retaliate against him for the exercise of his First Amendment rights.

In response, Chisholm argues that he did not take an overt act in furtherance of the conspiracy because he had a duty to warn Jones of the danger posed by Blackwell, given that Blackwell owned a gun. Yet he presents no authority demonstrating that he had a duty to warn Jones that Blackwell owned a gun. Chisholm's cited case law on the duty to warn comes from product liability cases involving state law claims for failure to warn. *See Doe v. SexSearch.com*, 551 F.3d 412, 420 (6th Cir. 2008). Perhaps more critically, Chisholm does not present any explanation of why his supposed duty to warn precludes a finding that he engaged in an overt act to further the conspiracy. Chisholm's barebones assertion that he had a duty to warn Jones cannot defeat Blackwell's plausible allegations that Chisholm took an overt act "at the request of Defendant Jones" to retaliate against Blackwell. Compl., R. 17, PageID 117.

At this stage of the proceedings, therefore, Blackwell has sufficiently alleged that Jones and Chisholm conspired to retaliate against him for his speech. And Blackwell's conspiracy claim

suffices to establish that Chisholm acted "under color of state law" even if he was a private actor. *See Rudd*, 977 F.3d at 512.

### B. Qualified Immunity

We next consider whether the district court properly denied Jones and Chisholm qualified immunity. Blackwell bears the burden of showing that Jones and Chisholm are not entitled to qualified immunity, but his burden is "not high at the 12(b)(6) stage." *MacIntosh v. Clous*, 69 F.4th 309, 315 (6th Cir. 2023). We read the complaint in the light most favorable to Blackwell and evaluate whether it is "plausible" that Jones and Chisholm violated his clearly established constitutional right. *Id.*

We conduct the qualified immunity analysis in two steps. *Heyne*, 655 F.3d at 562–63. *First*, we determine whether Blackwell's factual allegations are sufficient to state a plausible claim that Jones and Chisholm violated his First Amendment rights. *Second*, we ask whether his rights were clearly established when the alleged retaliation occurred so that a reasonable officer would have known that their conduct violated those rights. *Id.*

### 1. First Amendment Violation

Blackwell argues that Chisholm and Jones violated his First Amendment rights by retaliating against him for expressing his views at the July 18, 2022, Inkster City Council meeting. To establish a First Amendment retaliation claim, Blackwell must plausibly allege (1) that he engaged in constitutionally protected speech; (2) that Jones and Chisholm took an adverse action against him; and (3) that there is a causal connection between his protected speech and the adverse actions taken against him. *Josephson v. Ganzel*, 115 F.4th 771, 783 (6th Cir. 2024). After analyzing each of these elements, we conclude that Blackwell has satisfied his minimal burden at this preliminary stage of alleging a First Amendment claim that is plausible on its face.

*Protected activity.* We first ask whether Blackwell engaged in protected speech. Blackwell contends that calling Jones a "chump" and carrying a satirical poster calling him a "Bad Inkster City Attorney" is constitutionally protected expression, and we agree. We have long recognized that the First Amendment protects the right of individuals to criticize public officials. *See, e.g.*, *Bloch*, 156 F.3d at 678. After all, criticizing the government resides "at the very center" of the First Amendment's protection for free speech. *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966). The First Amendment protects both Blackwell's oral and written criticism because "speech, whether it be oration or words written on a poster, is speech nonetheless." *Bible Believers v. Wayne County*, 805 F.3d 228, 258 (6th Cir. 2015) (en banc).

Jones does not challenge the district court's conclusion that Blackwell's actions at the Inkster City Council meeting constitute protected activity, and Chisholm's counterargument is misplaced. Chisholm argues that the Inkster City Council meeting was a limited public forum rather than a traditional public forum, but that distinction bears on the First Amendment regulations that are permissible in the forum, not on the protected character of the speech. *See Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 518–19 (6th Cir. 2019). Therefore, Blackwell plausibly alleged that his criticism of Jones at the July 18 City Council meeting was constitutionally protected.

*Adverse action.* For the next element of a retaliation claim, we conclude that Blackwell plausibly alleged that Jones and Chisholm took adverse action against him by petitioning for a PPO. To evaluate whether conduct constitutes an "adverse action," we ask whether the action would deter a person of "ordinary firmness" from engaging in protected activity. *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). In most cases, this is a "question of fact" that cannot be resolved as a matter of law. *Id.* At the motion to dismiss stage, the district court must "weed out only

-10-

inconsequential actions," meaning de minimis injuries that do not amount to constitutional violations. *Hill v. Lappin*, 630 F.3d 468, 472–73 (6th Cir. 2010) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999) (en banc)). So Blackwell need only establish that Jones's and Chisholm's retaliatory acts caused "more than a de minimis injury." *Id.* at 473 (quoting *Bell*, 308 F.3d at 606). Additionally, since Blackwell is an ordinary citizen, the standard for an injury is even lower than it is for a public employee or prisoner. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010). He need only allege an injury that meets "the lower limit of a cognizable injury for a First Amendment retaliation claim." *Id.*

This minimal standard is satisfied here. For adverse actions, Blackwell alleges that Jones petitioned for a PPO and that Chisholm screenshotted images of firearms from his Instagram and provided them to Jones for the PPO petition. And Blackwell plausibly alleged a § 1983 conspiracy claim, so Jones and Chisholm can be held liable for the other's actions. *See Rudd*, 977 F.3d at 512–13. Together, these actions caused Blackwell more than a "de minimis" injury. Blackwell alleges that the PPO prohibited him from attending Inkster City Council meetings in person, communicating with Jones, and purchasing or possessing a firearm. He specifically contends that the PPO infringed on his rights to freedom of speech, petition the government, and peaceful assembly. As a private citizen, Blackwell has satisfied the minimal requirement to allege a cognizable constitutional injury.

The defendants' arguments to the contrary are unpersuasive. Jones and Chisholm contend that the PPO's prohibition on Blackwell's in-person attendance at Inkster City Council meetings was a de minimis injury because Blackwell could still attend meetings via Zoom. Jones emphasizes that Blackwell continues to attend Inkster City Council meetings via Zoom and recently told the district court that he is unable to physically attend meetings due to his partial paralysis. However,

as the magistrate judge stated, it is "not clear at this stage" whether a Zoom option is "always available to Blackwell." R&R, R. 32, PageID 362. And it strikes us as ironic to say that Blackwell was not injured because he cannot physically attend the City Council meetings due to his paralysis, given that he did attend a City Council meeting in person in this case. Likewise, Blackwell's recent attendance patterns before the district court do not determine whether he was injured by the ban on in-person attendance at City Council meetings during the term of the PPO. Moreover, Blackwell alleges that the PPO prohibited him from possessing firearms and speaking to Jones through any means, and the defendants do not argue that these restrictions were de minimis.

*Causation.* We turn next to causation. At this stage, Blackwell must allege (1) Jones's and Chisholm's acts proximately caused the adverse action and (2) Jones's and Chisholm's acts were motivated in substantial part by a desire to punish him for the exercise of his constitutional rights. *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012).

On the first prong, Blackwell has sufficiently alleged proximate causation because his injury—prohibition on in-person attendance at City Council meetings, communication with Jones, and firearm possession—was the intended and foreseeable result of the defendants' plan to obtain a PPO against him. Constitutional causation is "no different from" common law causation, meaning that an officer can be liable under § 1983 "for the natural consequences of his actions." *McKinley v. City of Mansfield*, 404 F.3d 418, 438 (6th Cir. 2005) (quoting *Monroe v. Pape*, 365 U.S. 167, 187 (1961)). The proximate cause analysis for § 1983 claims is therefore "a matter of foreseeability," and we ask whether it was reasonably foreseeable that the alleged injury to Blackwell would result from Jones's conduct. *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 609 (6th Cir. 2007). Taking these allegations, the answer is yes. It was reasonably foreseeable to Jones that filing a PPO petition requesting that Blackwell be prohibited from

appearing at his workplace, communicating with him, or possessing a firearm would result in the issuance of a PPO with those restrictions. It was also reasonably foreseeable to Chisholm that sending screenshots of Blackwell's Instagram posts of his gun to Jones for the purpose of the PPO would result in the issuance of a PPO with those restrictions. Jones cannot pass all the blame to the Michigan Circuit Court by saying it caused Blackwell's injury by issuing the PPO (something Jones had no power to do). Even though the Michigan courts may have been the "immediate trigger" for Blackwell's injuries, Jones may be "proximately liable" because the court action was the foreseeable result of his petition. *Id.*

On the second prong, Blackwell has also plausibly alleged that Jones and Chisholm were substantially motivated by a desire to punish him for exercising his constitutional right to criticize Jones.[1] Jones's and Chisholm's retaliatory animus "must be a 'but-for' cause" of their adverse actions, meaning that they would not have taken them but for the fact that Blackwell engaged in protected speech. *Rudd*, 977 F.3d at 515 (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019)). Here, the temporal proximity between Blackwell's protected conduct and Jones's and Chisholm's retaliatory acts creates an inference of retaliatory motive. *King*, 680 F.3d at 695–96. Within three days after Blackwell criticized Jones at the Inkster City Council meeting, Chisholm screenshotted firearm posts from Blackwell's Instagram and sent them to Jones, and Jones petitioned for a PPO against Blackwell and included the screenshots as an exhibit. Perhaps even more important, Jones's PPO petition itself lists Blackwell's July 18th criticism of him as the first example of

---

[1] Although there was some uncertainty in our case law about who bears the burden of proving but-for causation, *Rudd*, 977 F.3d at 515, we recently made clear that the state-actor defendants bear this burden if a plaintiff shows that the speech was a substantial factor in the adverse action. *See Lemaster v. Lawrence County*, 65 F.4th 302, 309 (6th Cir. 2023). Regardless, Blackwell's complaint plausibly alleges both types of causation here.

"stalking or other threatening behavior." PPO Pet., R. 17-5, PageID 150–52. Jones and Chisholm may be able to rebut his allegations of retaliatory motive after discovery by presenting evidence of alternative motivations, but Blackwell has alleged sufficient facts to establish causation at this stage.

With all three elements satisfied, Blackwell has plausibly stated a claim that Jones and Chisholm retaliated against him in violation of the First Amendment.

### 2. Clearly Established Law

Having determined that Blackwell adequately pled a First Amendment retaliation claim, we turn to the question of whether Jones and Chisholm are nonetheless entitled to qualified immunity because it was not "clearly established" in July 2022 that filing for a protective order accusing Blackwell of "stalking or other threatening behavior" violated the First Amendment. At the motion to dismiss stage, we ask whether, reading the complaint in the light most favorable to Blackwell, it is plausible that Jones's and Chisholm's actions violated his clearly established constitutional right. *Heyne*, 655 F.3d at 562–63.

In evaluating whether the law was clearly established, we are cautious "not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). The contours of the right must be defined so that it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "A rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that the rule was firmly established.'" *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018) (citation modified). While we do not require an earlier decision that is "on all fours with the instant fact pattern to form the basis of a clearly established right," we generally look for "a sufficiently analogous case (or cases) from which a reasonable official would

understand that what he is doing violates that right." *Pleasant View Baptist Church v. Beshear*, 78 F.4th 286, 295 (6th Cir. 2023) (citation modified). The question is whether our cases give "fair and clear warning to officers about what the law requires." *Heeter v. Bowers*, 99 F.4th 900, 920 (6th Cir. 2024) (citation modified).

Applying this standard, we start with an incontrovertible legal truism. The First Amendment "protects the right of an ordinary citizen to criticize public officials," *Rudd*, 977 F.3d at 513, and "to be free from retaliation for doing so," *Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010). Therefore, it is unconstitutional for public officials to retaliate against private citizens who exercise their First Amendment right to do so. *See Barrett v. Harrington*, 130 F.3d 246, 264 (6th Cir. 1997); *Zilich v. Longo*, 34 F.3d 359, 365 (6th Cir. 1994).

We have held that this proposition satisfies the "clearly established" test in other retaliation cases. *See, e.g.*, *Barrett*, 130 F.3d at 264, *Zilich*, 34 F.3d at 365; *Cooperrider v. Woods*, 127 F.4th 1019, 1040 (6th Cir. 2025); *see also* 2 Sheldon H. Nahmod, Civil Rights & Civil Liberties Litigation: The Law of Section 1983 § 8:20 (2025) (explaining that in First Amendment cases, courts frequently hold that the right is so clearly established that finding a constitutional violation dictates finding as a matter of law that the defendant violated clearly established law). But we often identify precedent that articulates the right at issue more specifically before saying that the law was "clearly established" for any given set of facts. And the Supreme Court has also at times required more specificity even in the First Amendment context. *See Reichle v. Howards*, 566 U.S. 658, 664–65 (2012). Regardless of if greater specificity is necessary, it exists here.

Our "clearly established" analysis, as applied to the facts here, gives rise to two questions. *First*, was Blackwell's speech protected by the First Amendment under "clearly established law?" *Second*, would a reasonable officer have a "fair and clear warning" that they could not petition for

a PPO for stalking in response to Blackwell's speech? These inquiries roughly align with the protected speech and adverse action prongs discussed above. After examining the specific case law on each point, we answer both questions in the affirmative.

Our first inquiry is whether a reasonable official would have understood that Blackwell's speech criticizing a government official at a public meeting was constitutionally protected. As we explained above, the First Amendment provides robust protection for the rights of individuals to criticize public officials. *See Bloch*, 156 F.3d at 678; *Rosenblatt*, 383 U.S. at 85. And this robust protection extends to Blackwell's poster because "speech, whether it be oration or words written on a poster, is speech nonetheless." *Bible Believers*, 805 F.3d at 258. While Blackwell's speech may have been "tasteless, boorish, and offensive," *DWJ*, 2023 WL 7270488, at \*5, it is a "bedrock principle" that the First Amendment protects speech even if it is "offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989). We note that the First Amendment "does not protect a person who tells knowing or reckless lies or takes threatening actions." *Rudd*, 977 F.3d at 514. But from the well-pleaded allegations in the complaint—which our analysis is limited to at the motion to dismiss stage—Blackwell's speech was not threatening, vulgar, or otherwise outside the scope of First Amendment protection. Likewise, on these allegations, Blackwell did not disrupt the meeting or break any City Council rules. Therefore, it was clearly established that Blackwell engaged in protected speech under the First Amendment.

Jones's counterarguments fall flat. He argues that there is no clearly established law addressing whether Blackwell's speech lost its protected status by impinging his "right to be left alone," or falling into the "fighting words" exception to First Amendment protection. In the absence of that case law, he contends that a reasonable officer would not have known Blackwell's

speech was protected and, therefore, did not constitute stalking.[2] But it is beyond debate that criticism of public officials, through speech and written materials, is protected by the First Amendment, even if impolite. This criticism may bother public officials, but unless it is defamatory, threatening, obscene, or otherwise unprotected, they cannot suppress it simply because they would prefer to be "left alone." Rather, the law is clear, that in stepping into a public role, such officials must "shoulder a degree of criticism about their public service" from private citizens. *Hou. Cmty. Coll. Sys. v. Wilson*, 142 S. Ct. 1253, 1261 (2022). After all, the First Amendment represents a "commitment" to the principle that public debate "may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). So Jones cannot argue that it was unclear that Blackwell's speech is protected on the basis of the "right to be left alone."

Similarly, it is clearly established that Blackwell's poster and statement calling Jones a "chump" do not even approach the "fighting words" exception. That doctrine is "very limited," and we have held that insults far more vulgar than Blackwell's retain First Amendment protection. *Greene v. Barber*, 310 F.3d 889, 895–96 (6th Cir. 2002) (finding that the plaintiff's characterization of police officer as an "asshole" and "stupid" was constitutionally protected); *see also Wood v. Eubanks*, 25 F.4th 414, 423, 425 (6th Cir. 2022) (finding that the plaintiff's description of police officers as "fucking thugs with badges," "six bitch ass fucking pigs," and "eight pussies with badges," among other insults was constitutionally protected).

Jones additionally argues that the protected status of Blackwell's speech could not have been clearly established because a Michigan judge found it was not protected. He highlights the

---

[2] Under Michigan law, the definitions of harassment and stalking exclude constitutionally protected activity. Mich. Comp. Laws Ann. §§ 750.411h(1)(d)–(e); 750.411s(6).

ruling from the Michigan Circuit Court, which granted the PPO before the Michigan Court of Appeals reversed, and he argues that the inconsistent judicial decisions show that Blackwell's right was not clearly established. True, as in the cases Jones cites, we have sometimes identified a lack of federal case law or an active judicial debate on a constitutional issue in holding that a right was not clearly established. *See Wilson v. Layne*, 526 U.S. 603, 616–18 (1999) (noting a lack of federal cases); *Pleasant View Baptist Church*, 78 F.4th at 299–300 (noting the "hotly contested" debate on constitutional question). However, we do not view a contrary decision by a single judge as dispositive in our qualified immunity inquiry; if we did, we could have never reversed a grant of qualified immunity on appeal, which we have done. Moreover, as the Michigan Court of Appeals explained, the Circuit Court erroneously held that the protective order did not violate Blackwell's First Amendment rights based on an inapposite Supreme Court case. *DWJ*, 2023 WL 7270488, at *3–4. Instead, the precedents we have cited, from both our circuit and the Supreme Court, demonstrate that it was clearly established that Blackwell engaged in protected conduct.

On the second inquiry, it is clearly established that Jones and Chisholm could not retaliate against Blackwell for his protected speech by petitioning for a PPO against him. Under our case law, public officials are not only on notice that they generally cannot retaliate against private citizens for exercising their First Amendment rights; they are on notice that they specifically cannot make "allegedly false" accusations of stalking to retaliate against protected speech. *Barrett*, 130 F.3d at 262–64.

As the district court recognized, our decision in *Barrett* is particularly helpful for demonstrating that Jones and Chisholm knew or should have known they were violating Blackwell's First Amendment rights. In *Barrett*, the plaintiff alleged that a state-court judge retaliated against him for his public criticism by making statements to the media that he was

stalking her. *Id.* at 262. We denied qualified immunity to the judge because it was "well-established" that a public official could not retaliate against an individual for exercising their First Amendment right to criticize the official. *Id.* at 264. Making such allegations of stalking was retaliation. *Id.* After determining that the plaintiff's right was clearly established, we noted that the judge admitted she knew the stalking statute did not apply to the plaintiff's conduct, meaning she knew or should have known that the retaliatory stalking accusation violated his rights. *Id.* Therefore, the judge's accusations of stalking violated the plaintiff's clearly established First Amendment right "of which a reasonable person in her position would have been cognizant," and she was not entitled to qualified immunity. *Id.* We cited and reaffirmed *Barrett* when we held that a plaintiff's allegation that a defendant "obtained a protection order by falsely accusing him of stalking" was an adverse action that could chill an ordinary person from exercising their First Amendment rights. *Rudd*, 977 F.3d at 515. *Barrett* and *Rudd* together provide clearly established law that a public official cannot retaliate against protected speech by making allegedly false accusations of stalking, whether addressed to the media or the courts.

The clearly established law from *Barrett* and *Rudd* governs this case. Blackwell alleges that Jones retaliated against him for his public criticism by mischaracterizing his constitutionally protected speech as "stalking or other threatening behavior" in the PPO petition. PPO Pet., R. 17-5, PageID 151–52. *Barrett* gave a reasonable official a fair and clear warning that they could not retaliate against Blackwell's protected speech by making "allegedly false" accusations of stalking. And after *Rudd*, a reasonable official was specifically on notice that they could not make such false accusations to obtain a PPO.

In fact, Jones's and Chisholm's accusations of stalking are arguably more egregious than those made in *Barrett*. There, the state-court judge did not witness much of plaintiff's speech about

her but was notified by multiple people that the plaintiff made profane and hostile statements that caused them to be concerned for her safety. *Barrett*, 130 F.3d at 249. By contrast, here, Jones witnessed Blackwell's conduct yet never alleged in his PPO petition that Blackwell made any threats or lewd or vulgar comments; Jones also never alleged that any of Blackwell's conduct occurred outside of public meetings or communications with public entities. Even though he did not allege any threat by Blackwell, Jones repeatedly described Blackwell's conduct as "stalking or other threatening behavior" in his petition. PPO Pet., R. 17-5, PageID 151–52. As the Michigan Court of Appeals recognized, Blackwell's speech actually commented on Jones's "competence in the performance of his public duties" which, as discussed above, is clearly protected by the First Amendment. *DWJ*, 2023 WL 7270488, at \*4. And our case law provides a fair and clear warning to a reasonable official that making accusations of stalking on the basis of that protected speech is a constitutional violation.

Jones points out that in *Barrett* the state-court judge admitted that she knew the plaintiff's conduct was not stalking under the statute. This case, however, arises at the motion to dismiss stage rather than the motion for summary judgment stage, so there has been no opportunity for factual development about the defendants' knowledge. And we have recognized that, especially in the First Amendment context, we often "need a fuller factual picture" to determine whether an official violated clearly established law. *Diei v. Boyd*, 116 F.4th 637, 650–51 (6th Cir. 2024).

In addition, such a concession is not necessary to establish that Jones and Chisholm "knew or should have known" that their conduct violated Blackwell's constitutional rights. The clearly-established inquiry is an objective one, so Jones's and Chisholm's subjective knowledge of the stalking statute is not dispositive. *See Baynes v. Cleland*, 799 F.3d 600, 610–11 (6th Cir. 2015). The question is whether, under an objective "reasonable official" standard, Jones and Chisholm

knew or should have known that petitioning for a PPO based on allegedly false accusations of "stalking or other threatening behavior" violated Blackwell's clearly established First Amendment rights. And *Barrett* establishes that a reasonable official should know that making such accusations violates clearly established First Amendment rights.

Jones attempts to cabin *Barrett* to holding that a public official violates § 1983 when they "*knowingly* make *false* accusations" of stalking to retaliate against an individual's public criticism. Jones Br. at 17. So he contends that the decision does not apply to the specific context of his PPO because Blackwell conceded that the underlying factual allegations in the PPO petition were true. However, the truthfulness of the underlying statements is not a basis to distinguish *Barrett* from the facts in this case. While the judge in *Barrett* knew her stalking accusations were false under the law, the case does not suggest that any of her statements about the plaintiff's actions in investigating her were untrue. The judge put a false label on the plaintiff's actions by claiming that his constitutionally protected criticism constituted stalking, and Blackwell alleges that Jones did the same thing here by filing a PPO petition mischaracterizing his constitutionally protected criticism as "stalking or other threatening behavior." Therefore, the truthfulness of the underlying factual statements in Jones's PPO petition does not immunize him from a § 1983 suit, especially since we have explained that an "act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper." *Bloch*, 156 F.3d at 681–82 (citation modified).

Because we conclude that the complaint plausibly alleges that Jones and Chisholm violated Blackwell's clearly established First Amendment right, we affirm the district court's denial of Jones's and Chisholm's motion to dismiss on grounds of qualified immunity.

## II.  Municipal Liability Claim Against Inkster

We turn now to Inkster's argument that the district court erred in denying the motion to dismiss Blackwell's municipal liability claim. While we had jurisdiction to review the district court's decision as to the individual defendants, Jones and Chisholm, we hold that we lack jurisdiction to review the decision as to Inkster.

The denial of a municipal liability claim is not an immediately appealable final decision. *Crockett v. Cumberland Coll.*, 316 F.3d 571, 578 (6th Cir. 2003). Unlike qualified immunity, municipal defenses provide a "mere defense to liability" rather than a right to immunity from trial. *Summers v. Leis*, 368 F.3d 881, 888–89 (6th Cir. 2004) (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 43 (1995)). Therefore, a municipal defense is not "effectively lost" if a case proceeds past the motion to dismiss stage. *Id.* at 889 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Accordingly, on its own, we cannot review the denial of a municipality's motion to dismiss a § 1983 action at this interlocutory stage.

We can, however, exercise pendent appellate jurisdiction over the interlocutory appeal of a municipal liability claim if it is "'inextricably intertwined' with the qualified immunity analysis" for Jones and Chisholm which is properly before us. *Lane v. City of LaFollette*, 490 F.3d 410, 423 (6th Cir. 2007) (quoting *Crockett*, 316 F.3d at 578). A pendent municipal liability claim is inextricably intertwined with a qualified immunity appeal if appellate resolution of qualified immunity necessarily resolves the municipal liability claim. *Mattox v. City of Forest Park*, 183 F.3d 515, 524 (6th Cir. 1999).

Here, the appeal of Blackwell's municipal liability claim and the appeal of the denial of qualified immunity are not inextricably intertwined because resolution of Jones's and Chisholm's qualified immunity appeal does not necessarily resolve the municipal liability claim. Jones's and

Chisholm's liability depends on whether they retaliated against Blackwell's protected speech in violation of his clearly established rights, whereas Inkster's liability depends on whether it had a municipal policy or practice of funding retaliation. While the two claims are related, Inkster could be liable for its policy of funding retaliation even if Jones and Chisholm were protected by qualified immunity. If Inkster "ratified" Jones's and Chisholm's actions which "though unconstitutional, [were] not in violation of clearly-established law," it is possible that Inkster could be independently liable even though Jones and Chisholm were entitled to qualified immunity. *Baker v. Union Twp.*, 587 F. App'x 229, 237 (6th Cir. 2014). Because our resolution of Jones and Chisholm's interlocutory appeal does not necessarily determine Inkster's municipal liability, we do not have pendent appellate jurisdiction to consider Inkster's appeal. Accordingly, we dismiss Inkster's appeal of the denial of the motion to dismiss Blackwell's municipal liability claim for lack of jurisdiction.

## CONCLUSION

We affirm the district court's denial of the motion to dismiss Blackwell's First Amendment retaliation claims against Jones and Chisholm. We dismiss Inkster's appeal of the denial of its motion to dismiss Blackwell's municipal liability claim for lack of jurisdiction.